**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| DAVID C. COLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No.  CIV-04-941-F |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

# FINDINGS & RECOMMENDATION
# OF MAGISTRATE JUDGE

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying his applications for disability insurance benefits (DIB) under 42 U.S.C. §§416(i) and 423 and supplemental security income benefits (SSI) under 42 U.S.C. §1382c(a)(3). This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B), and for the reasons stated herein, it is recommended that the Commissioner's decision be **AFFIRMED.**

## PROCEDURAL HISTORY

Plaintiff filed his applications for DIB and SSI on August 25, 1999 with a protective filing date of August 25, 1999 (TR. 62-64, 61, 609-611). Plaintiff's applications alleged a disability since November 16, 1998 (TR. 63, 610). The applications were denied on initial consideration and on reconsideration at the administrative level (TR. 44, 45, 612, 616). Pursuant to the Plaintiff's request, a hearing de novo was held before an administrative law judge (ALJ) on March 9, 2001 (TR. 639-693). The Plaintiff appeared in person and with his attorney and offered testimony in support of the applications (TR. 642-675). A vocational expert (VE) testified at the request of the ALJ (TR. 686-690). The ALJ issued her decision on September 18, 2003 finding that Plaintiff was not entitled to DIB or SSI (TR. 17-36). The Appeals Council denied the Plaintiff's request for review

on June 18, 2004, and thus, the decision of the ALJ became the final decision of the Commissioner

(TR. 7-9).

## STANDARD OF REVIEW

The Tenth Circuit case of Casias v. Secretary of Health & Human Services, 933 F.2d 799,

800-801 (10th Cir. 1991), sets forth the standard of review for social security disability cases:

> We must affirm the decision of the Secretary if it is supported by substantial
> evidence. (citations omitted). Substantial evidence is "more than a mere
> scintilla. It means such relevant evidence as a reasonable mind might
> accept as adequate to support a conclusion." (citations omitted). In
> evaluating the appeal, we neither reweigh the evidence nor substitute our
> judgment for that of the agency. (citations_omitted). We examine the
> record as a whole, including whatever in the record fairly detracts from the
> weight of the Secretary's decision and, on that basis, determine if the
> substantiality of the evidence test has been met. (citations omitted). If,
> however, the correct legal test in weighing the evidence has not been
> applied, these limitations do not apply, and such failure constitutes grounds
> for reversal. (citations omitted).

Further, the Tenth Circuit has stated that "[a] finding of no substantial evidence will be

found only where there is a conspicuous absence of credible choices or no contrary medical

evidence." Trimiar v. Sullivan, 966 F.2d 1326, 1329 (10th Cir. 1992) (citations omitted).

## DISCUSSION & FINDINGS

In addressing the Plaintiff's disability applications the ALJ followed the five-step sequential

evaluation process set forth in 20 C.F.R. §404.1520.  At step one, the ALJ found that the Plaintiff

had not engaged in substantial gainful activity since the alleged disability onset date, so the

process continued (TR. 35).  At step two, the ALJ concluded that the Plaintiff suffers from severe

impairments due to

> hepatitis with some liver enlargement and neuropathy; learning
> disability/possible dyslexia with reports of an adult attention deficit disorder;
> an affective disorder (dysthymia/major depression with periods of
> exacerbation around the holidays); a personality disorder, especially
> narcissistic, antisocial, and dependent; and marijuana abuse and
> prescription drug abuse

(TR. 35).   At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments which meet or equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 35).   At step four, the ALJ found that Plaintiff lacked the residual functional capacity (RFC) to perform his past relevant work (PRW).

At the point that step five is reached, a disability preventing prior work activity has been shown and the burden shifts to the Commissioner to show that the claimant retains the ability to perform an alternative work activity which exists in the national economy. Sorenson v. Bowen, 888 F.2d 706, 710 (10th Cir. 1989); Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). The ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform less than the full range of light and sedentary work (TR. 36).    Based upon Plaintiff's exertional capacity for light and sedentary work, and the claimant's age, education, and work experience,  Medical Vocational Rule 202.21 contained in 20 C.F.R. Part 404, Subpart P, Appendix 2, (hereafter "Grids") when used as a framework for decision making directed a conclusion that Plaintiff was not disabled within the meaning of the Social Security Act and was therefore not entitled to DIB or SSI (TR. 36).

On appeal to this Court, Plaintiff alleges that the ALJ erred in (I) determining that Plaintiff did not meet Listing 5.05E; and (II) in determining at step five that the Commissioner met her burden of showing that there were jobs in the national economy which Plaintiff could perform.

## Medical Evidence

In February 1998 Plaintiff was examined by Jerry D. White Ph.D. (psychologist), who diagnosed Plaintiff as having dysthymia, attention deficit hyperactive disorder (ADHD) NOS by history, and a learning disability NOS (TR. 119).  Dr. White also reported that Plaintiff had a GAF score of 50 [1] indicating a serious impairment in overall functioning for the past year (TR. 119).  Dr.

---

[1]

 A GAF represents Axis V of the Multiaxial Assessment system.  A GAF score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), (4th ed. 1994), p. 30. The GAF score is taken from the GAF scale which "is to be rated with respect only to psychological, social, and occupational functioning." Id. The GAF Scale ranges from 100

White further reported that Plaintiff's ability to function in independent gainful employment was being affected by his learning problems; that his emotional interferences lowered his frustration tolerance and impaired his ability to cope with stress and to make adjustments when necessary; and that his conflicts with others in interpersonal settings also affected his ability to sustain employment (TR. 119).

In October 1999 Plaintiff was examined by Dan L. Stehr, M.D. (internal medicine), who reported that Plaintiff was alert and cooperative; that his liver was slightly enlarged and tender to palpation; that his heel and toe walking were weak; and that there was sensory loss to light touch and pinprick sensation in the lower extremities (TR. 163-164).   Dr. Stehr's impression was of hepatitis C infection of the liver with weakness and neuropathy secondary to hepatitis C (TR. 164).

Also in October 1999, Plaintiff underwent a mental status examination performed by Robert Danaher, Psy.D. (clinical psychologist) (TR. 165-168).   Dr. Danaher diagnosed Plaintiff as having major depressive disorder, recurrent and of moderate severity with a learning disorder NOS and ADHD NOS (TR. 168).   Dr. Danaher also diagnosed Plaintiff as having schizotypal disorder, hepatitis C and a GAF score of 55 (TR. 168).

In November 1999, agency physicians completed a Mental RFC Assessment which stated that Plaintiff was "markedly limited" in the following areas: The ability to understand and remember detailed instructions; and the ability to carry out detailed instructions (TR. 244). Plaintiff was rated as "moderately limited" in his ability to maintain attention and concentration for extended periods and in his ability to interact appropriately with the general public (TR. 244-245). The agency physicians in their functional capacity assessment opined that Plaintiff could

---

(superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 32. The GAF scale defines the range from 41 to 50 as follows: "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." The GAF scale defines the range from 51 to 60 as follows: "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

understand, remember and carry out simple instructions independently; that he could relate adequately to supervisors and coworkers; and that he could interact at least superficially with the general public (TR. 246).  They further stated that Plaintiff could adapt to work changes, and could complete a normal work day and work week (TR. 246).

In February 2000 Plaintiff was admitted to the hospital by David E. Linden, M.D., who described Plaintiff as pleasant, cooperative, alert and oriented (TR. 270).  Dr. Linden described Plaintiff's fund of knowledge as good, his memory and abstract reasoning were intact, and his insight and judgment were poor (TR. 270).  Plaintiff left the hospital against medical advice after staying approximately three days (TR. 271).  Upon admission Plaintiff's GAF score was 30 (TR. 275).

Also in February 2000 Plaintiff was examined by Badie S. Mansour, M.D. (anesthesiologist), who assessed Plaintiff as having neuropathy and peripheral neuropathy with a possible hepatitis C etiology (TR. 481).  He observed that Plaintiff had a moderate loss of sensation in both lower extremities; that his upper extremity sensation was normal to very moderately decreased; that his motor function was intact; and that his reflexes were within normal limits in all extremities (TR. 481).

Throughout 1999 and 2000 Plaintiff's treating physician, James B. Shackelford, M.D., consistently reported that Plaintiff's logic and reasoning were intact, his psychomotor activity was within normal limits, his mood normal (or mildly anxious) and his GAF score either 55 or 60 (TR. 293, 297, 299, 302-304, 355, 356, 358, 497).

In November 2000 a consultative examination of Plaintiff was performed by R. Keith Green, Ph.D. (clinical psychologist), who concluded that Plaintiff was within the low average range of current intellectual functioning; and that in problem-solving situations in general he would be able to attend, concentrate, persist, work at an adequate pace, retain and carry out simple and

detailed instructions, and relate interpersonally in an appropriate manner (TR. 366).  Dr. Green diagnosed Plaintiff as having a pain disorder associated with both "psychological factors and a general medical condition" (Tr. 367).  On one of the exams administered by Dr. Green, he noted that Plaintiff's "performance yields a profile suggesting a response set oriented toward exaggeration of psychological symptomatology" (TR. 366).

In December 2000, a Physical RFC Assessment was completed by agency physicians who concluded that Plaintiff could occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds; and sit, stand and/or walk for a total of about six hours in an eight hour workday (TR. 259). The agency physicians further concluded that Plaintiff had no other exertional, postural, manipulative, visual, communicative, or environmental limitations (TR. 259-263).

In July 2002 Plaintiff was hospitalized for six days with an admitting diagnosis of "psychosis, not otherwise specified" and a GAF score of 35 (TR. 503). Upon admission Plaintiff was having suicidal ideations with a plan to cut his wrists (TR. 504).  Otherwise, he was alert, oriented and in no apparent distress (TR. 504). Plaintiff responded well to medications, became free of the suicidal ideations, and was discharged with a diagnosis of somatoform disorder and a GAF score of 60 (TR. 503).

# I.

Plaintiff argues that he meets or equals the listing of impairments at Section 5.05(E) [2] Chronic Liver Disease with Hepatic Encephalopathy (See Plaintiff's Brief at pages 14-18). However, the medical record is devoid of any such diagnosis. Absent a specific diagnosis of hepatic encephalopathy, the ALJ was under no obligation to discuss and evaluate Plaintiff's condition under 12.02 Organic mental disorders.

---

[2]   5.05 Chronic liver disease (e.g., portal, postnecrotic, or biliary cirrhosis; chronic active hepatitis; Wilson's disease). With:  E. Hepatic encephalopathy. Evaluate under the criteria in listing 12.02.

At step three of the sequential evaluation process, a claimant's impairment is compared to the Listings (20 C.F.R. Pt. 404, Subpt. P, App. 1).   If the impairment is equal or medically equivalent to an impairment in the Listings, the claimant is presumed disabled.   The ALJ must determine at step three whether a claimant's medical findings are equal in severity and duration to those listed.   Bernal v. Bowen, 851 F.2d 297, 300 (10th Cir. 1988). Such medical findings include symptoms supplied by the Plaintiff, abnormalities which are shown by clinical diagnostic techniques, and laboratory findings.   However, the claimant's own descriptions, standing alone, are not enough to establish a physical or mental impairment. 20 C.F.R. § 404.1528(a),  Bernal at p. 300. A plaintiff has the burden of proving that a Listing has been equaled or met.   Bowen v. Yuckert, 482 U.S. at 140-42 (1987); Williams v. Bowen, 844 F.2d at 750-51 (10th Cir. 1988).  To be found disabled based on the Appendix 1 Listing of Impairments, Plaintiff must show that his condition satisfies all of the specified medical criteria of a particular Listing.  Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (impairment does not meet Listing if it has only some of the medical criteria, no matter how severe).

As previously discussed, the medical record fails to show that Plaintiff met the medical criteria for Listing 5.05E.   In her decision the ALJ thoroughly discussed the relevant medical evidence and explained why she found that Plaintiff was not disabled at step three" (TR. 26-28). See Clifton v. Chater, 79 F.3d 1007 (10th Cir. 1996).

Thus, it appears that the ALJ's finding at step three of the sequential evaluation process was supported by substantial evidence.

## II.

Plaintiff also argues that the ALJ erred at step five of the sequential evaluation process (See Plaintiff's Brief at pages 19-24).   First, he asserts that the ALJ was required to re-contact Plaintiff's treating physician, Dr. Shackleford, since the ALJ gave less weight to the medical

opinions expressed in the mental impairment questionnaire offered post hearing which bears Dr.

Shackleford's signature (among others)(TR. 31, 485-498).

In Goatcher v. United States Dep't of Health & Human Services, 52 F.3d 288 (10th Cir.

1995), the Tenth Circuit outlined factors which the ALJ must consider in determining the

appropriate weight to give a medical opinion.

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Id. at 290; 20 C.F.R. § 404.1527(d)(2)-(6). If an ALJ disregards a treating physician's opinion, he

must set forth "specific, legitimate reasons" for doing so.  Byron v. Heckler, 742 F.2d 1232, 1235

(10th Cir. 1984).

In her decision the ALJ provided a detailed and thorough review of the medical evidence.

She also provided specific legitimate reasons for disregarding the opinions of Dr. Shackleford. In

her decision the ALJ correctly observed that

> Dr. Shackleford and a mental health professional completed a mental impairment questionnaire, apparently prepared by the claimant's attorney following the hearing (Exhibit 28F). There is no statement what evidence was considered and the degree of influence that the claimant or his attorney had in completion of the questionnaire. It appears that the claimant was asked which symptoms that he endorsed. There is a reference to a Stanford Binet Intelligence Test from 1985, which is not a part of the record. The handwriting indicates that the form was completed by the mental health professional, whose opinion is not entitled to the same amount of weight as a psychiatrist or psychologist. The listed global assessment of functioning is lower than indicated in any medical notes and is not consistent with other evaluators, including one more recent than this evaluation. The Administrative Law Judge notes that the statement indicates that the claimant needs medications to function, but the evaluation should include the level

> of functioning with medications. The statement shortly following the hearing appears to be a statement merely to advocate the claimant's receipt of benefits, and is given significantly less weight than the contemporaneous treatment notes

(TR. 31). The ALJ is not required to re-contact a treating physician unless the evidence from the medical source is inadequate to determine whether a disability exits. 20 C.F.R. §404.1512(e). Here, the evidence is not inadequate, it is simply unreliable for the many reasons described by the ALJ.

Thus, it appears that the ALJ properly considered and disregarded the opinions of Dr. Shackleford and/or his minions as expressed in the mental impairment questionnaire.

Lastly, Plaintiff urges that the ALJ erred at step five by not including in her hypothetical question to the VE certain vocational restrictions such as Plaintiff having extreme problems in maintaining concentration; that Plaintiff would likely be suicidal or homicidal if not kept on medications; and that he would be absent from work more than three times a month (See Plaintiff's Reply Brief a page 5). As previously discussed, these restrictions are not established by the medical evidence and are found only in the mental health questionnaire which was appropriately disregarded by the ALJ.

An ALJ need include only those limitations in the hypothetical question to the VE which he properly finds are established by the evidence. Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995). The ALJ posed an appropriate hypothetical to the VE which included Plaintiff's restrictions (TR. 688). The hypothetical yielded a significant number of jobs in the national economy which could be performed by Plaintiff (TR. 688). Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991) (VE's response to hypothetical question composed of assumptions supported by the record is substantial evidence). Thus, the Commissioner met her burden of showing at step five that Plaintiff retained the ability to perform an alternative work activity which exists in the national economy.

**RECOMMENDATION**

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner is supported by substantial evidence and should be **AFFIRMED**.  The parties are advised of their right to object to these findings and recommendation within twenty (20) days of the date of the filing hereof, in accordance with 28 U.S.C. §636 and Local Court Rule 72.1 (a). The parties are further advised that failure to make timely objection to these findings and recommendation waives their right to appeal from a judgment of the district court based upon these findings and recommendation. Moore v. United States, 950 F.2d 656 (10th Cir. 1991).

The foregoing Findings and Recommendation disposes of all issues referred to the undersigned magistrate judge in the above captioned matter.

ENTERED this the 18th day of July, 2005.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE